# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**MOHD S. AHMAD,**

      **Petitioner,**

    **v.**                    **CASE NO. 2:08-CV-364**
                                   **CRIM. NO. 2:07-CR-133**
                                   **JUDGE WATSON**
                                   **MAGISTRATE JUDGE KING**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant motion and memorandum in support, respondent's return of writ, petitioner's response and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## PROCEDURAL HISTORY

Petitioner's underlying criminal convictions on fraud and related activity in connection with access devices, in violation of 18 U.S.C. §1029(a)(2), and bank fraud, in violation of 18 U.S.C. §1344, are the result of his August 8, 2007, negotiated guilty pleas to counts 3, 5, 7, 10, 13, 17, 19, 22, and 24 of the indictment; the remaining charges (*i.e.*, counts 1, 2, 4, 6, 8, 9, 11, 12, 14, 15, 16, 18, 20, 21, 23, and 25 of the indictment), were dismissed. Doc. Nos. 21, 23. On December 20, 2007, the Court sentenced petitioner to 33 months imprisonment on each count, such sentences to run currently with each other, to be

followed by five years supervised release.  Doc. No. 33.

On April 16, 2008, petitioner filed the motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255, asserting the following claim:

> Because of his status as a deportable alien, petitioner was ineligible to receive the rewards which are offered for the residential drug abuse program (DAP).  Also, petitioner cannot receive a timely half-way house release.  This place[s] the defendant/petitioner to serve sentence under circumstances more severe than those facing citizens under similar circumstances.  "Collateral Consequences" are not part of judgment conviction and are not imposed upon the defendant for the purpose of punishing him.
>
> The issue presented by this case is whether unusual harsh collateral consequences that are visited by law on a defendant as a result of his conviction may provide a basis for mitigating the penal sanction that would otherwise be required by the sentencing guidelines....

It is the position of the respondent that petitioner's claim is without merit.

## MERITS

Petitioner asserts that his sentence violates due process, the equal protection clause, and the eighth amendment to the United States Constitution, because he is being punished more severely than inmates who are citizens, because of his status as an alien subject to deportation upon his release from prison.  Petitioner complains that, due to his alien status, he is ineligible for the prison's drug abuse program, is unable to serve the last ten percent of his sentence in a halfway house and cannot obtain early release on home confinement, and may lose good time credits if he refuses to attend school while in prison.

Assuming that petitioner's claim(s) is properly before this Court pursuant to 28

U.S.C. §2255,[1] the Magistrate Judge concludes that, for the reasons discussed by the United

---

[1] Challenges to the execution of a prisoner's sentence under 28 U.S.C. §2241 must be brought in the judicial district of the prison where the petitioner is housed. *Griffin v. Herrera,* 212 F. Supp. 2d 707, 709 (E.D. Michigan 2002), *citing Charles v. Chandler,* 180 F.3d 753 (6th Cir. 1999); *Baldwin v. United States,* 412 F.Supp.2d 712, 715 (N.D. Ohio 2005), *citing United States v. Peterman,* 249 F.3d 458, 461 (6th Cir. 2001); *see also Hacker v. Federal Bureau of Prisons,* 450 F.Supp.2d 705, 709 (E.D. Michigan 2006)(challenge to Bureau of Prison regulations denying prisoner halfway house eligibility properly brought under § 2241); *United States v. Recinos-Gallegos,* 151 F.Supp.2d 659 (D.Md. 2001)(equal protection challenge to alien's ineligibility for prison programs properly brought under § 2241), *citing United States v. Acevedo,* 246 F.3d 682, 2001 WL 280485 (10th Cir. 2001).

However, the United States District Court for the Southern District of Georgia has concluded that claims like those raised in this case are not properly brought under 28 U.S.C. § 2241, but rather in a motion under 28 U.S.C. § 2255 or 42 U.S.C. § 1983. *Minh v. United States,* 2006 WL 2444085 (S.D. Ga. August 22, 2006):

> Petitioner, a deportable alien, argues that the Bureau of Prisons ("Bureau") has subjected him to more severe conditions of confinement than those faced by United States citizens by housing him at McRae, which according to Petitioner is a facility reserved for prisoners who are likely to be deported. *Pet.,* p. 5. Petitioner states that, because of his status as a deportable alien, he is ineligible for a variety of prison programs, including work programs, educational opportunities, and drug abuse treatment programs, as well as transfer to a halfway house. *Id.* at 19-24. Petitioner also argues that his alienage prevents him from receiving consideration for early release. *Id.* at 23.

> * * *

> According to Petitioner, these collateral consequences of his alienage were not taken into account at his sentencing, and he is entitled to a sentence reduction.

> Despite Petitioner's attempt to cast his petition as challenging the "execution" of his sentence, *see Pet.,* p. 7, § 2241 is the wrong procedural vehicle for most-if not all-of his claims. Petitioner's chief argument is that,

if the sentencing court had been aware of the collateral consequences of his alienage, it would have given him a shorter sentence. *Id.* at 5-7. As relief, Petitioner seeks a sentence "adjustment." *Id.* at 8; *see also id.* at 28-30. In essence, Petitioner argues that he is entitled to be resentenced and granted a downward departure based upon his alien status. *See id.* at 25-26.

Simply put, Petitioner is challenging the fundamental validity of his sentence, not its execution. Such claims are properly brought in a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. §2255.

* * *

[T]o the extent Petitioner is contesting the conditions of his confinement, such claims are not properly brought under § 2241. The petition for habeas corpus is available to challenge the fact or duration of one's confinement, not the conditions of confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Stated another way, "the sole function of habeas corpus is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose." *Cook v. Hanberry,* 592 F.2d 248, 249 (5th Cir. 1979) ( *per curiam*).

Here, Petitioner disputes the Bureau's use of a detainer from the Bureau of Customs and Immigration Enforcement ("BICE") in determining his eligibility for prison programs or early release. *See Pet.*, p. 22. Claims of this sort are normally brought in a civil rights action, not a petition for writ of habeas corpus. *See, e.g., Stevens v. Heard,* 674 F.3d 320, 323 (5th Cir. 1982) (state prisoner's complaint challenging "the practice of considering any detainers in determining eligibility for prison programs" properly brought under 42 U.S.C. § 1983). That said, the Court recognizes that other courts have allowed federal prisoners to bring similar claims in § 2241 petitions. *See, e.g., United States v. Tamayo,* No. 04-2307, 162 Fed. Appx. 813, 815, 2006 WL 52792, at *2 (10th Cir. Jan.11, 2006) (considering alien's "equal protection" challenge to "execution" of his sentence under § 2241 without assessing whether claim was exhausted).

*Id.; Chau v. United States,* 2006 WL 2443351 (S.D.Ga. August 18, 2006)(same); *Avila v. United States*, 2007 WL 869723 (S.D. Ohio, March 20, 2007)(same).  *See also Pham v. Pugh,* 2006 WL 3091437 (S.D.Ga. October 27, 2006) (prisoner's claim that his sentence should be reduced because he is ineligible for drug treatment or halfway house due to alien

States District Court for the Southern District of Georgia, petitioner's claim does not warrant federal habeas corpus relief:

> [I]nmates do not have any federal constitutional right to participate in rehabilitative programs.[FN5] Nor does an inmate have any constitutionally protected interest in a particular housing assignment or transfer to a particular prison. *See, e.g., McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (no right to incarceration at any particular prison); *but see Wilkinson v. Austin*, 545 U.S. 209, __, 125 S.Ct. 2384, 2395 (2005)(Ohio prisoners had state-created liberty interest in avoiding assignment to "supermax" prison under the Fourteenth Amendment).[FN6].
>
> > FN5. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (federal prisoners have no due process right to eligibility for rehabilitative programs); *Murdoch v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (no protectible liberty or property interest in attending rehabilitation program); *Wishon v. Gammon*, 978 F.2d 446, 450 (8th Cir. 1992)(no right to educational or vocational opportunities); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no liberty interest in inmate classification or eligibility for work programs); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (no right to particular inmate classification or eligibility for rehabilitation programs); *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980) (same); *Battle v. Anderson*, 564 F.2d 388, 403 (10th Cir. 1977) ("an inmate does not have a federal constitutional right to rehabilitation"); *Lyle v. Sivley*, 805 F.Supp. 755, 759-60 (D.Ariz. 1990)

status properly brought "in a civil rights complaint filed pursuant to *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388.

(holding that due process clause does not give federal prisoners a protected right to participate in drug treatment programs).

FN6. The Supreme Court's recent decision in *Wilkinson* is not instructive in the instant case. In *Wilkinson*, the Supreme Court held that Ohio prisoners had a Fourteenth Amendment liberty interest in avoiding assignment to a special "supermax" prison-the only one of its kind in Ohio-in which inmates' lives were closely controlled and monitored, visitation was rare and occurred only through glass walls, and "inmates were deprived of almost any environmental or sensory stimuli and of almost all human contact." 545 U.S. at __. Placement in the prison lasted indefinitely, and prisoners otherwise eligible for parole lost their eligibility while incarcerated at the prison. *Id.* Petitioner has not shown... an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" comparable to that considered by the Supreme Court in *Wilkinson. Id.* at 2394 (quoting *Sandin v. Conner*, 515 U.S. 474, 483-84 (1995)).

Furthermore, the Bureau's use of BICE detainers in deciding prisoners' eligibility for prison programs and early release does not offend equal protection principles. Of note, courts have routinely upheld the Bureau's consideration of BICE detainers in making classification decisions regarding inmates, including such issues as security level and eligibility for prison programs.[FN7] ... Petitioner's argument that aliens are categorically denied transfers to halfway houses is misleading.... [T]he Bureau excludes all inmates-not just aliens-who are subject to detainers from participation in community-based treatment programs. *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999). The "detainer exclusion," which is based upon the rationale that prisoners with detainers pose an increased flight risk, does not single out aliens and does not violate the Equal Protection Clause. *Id.*

FN7. *See, e.g., Franklin v. Berry*, 909 F.Supp. 21, 27-28 (D.D.C. 1995)(upholding Bureau's reliance upon detainers in assigning security classifications to aliens); *Limas v. McNary*, 799 F.Supp. 1259, 1263 (D.Mass. 1992) (Bureau's decision to deny deportable aliens prerelease transfer to minimum security institutions did not implicate any constitutional right); *Isaraphanich v. Coughlin*, 715 F.Supp. 119, 120-21 (S.D.N.Y. 1989)(Bureau's reliance on detainers to deny aliens access to prison programs did not violate the Equal Protection Clause); *Fernandez-Collado v. I.N.S.*, 644 F.Supp. 741, 744 (D.Conn. 1986)("Petitioner has neither a legitimate statutory nor constitutional entitlement to those prison programs from which he may be denied access as a result of the detainer."), *aff'd,* 857 F.2d 1461 (2d Cir. 1987).

... The Bureau does not deny aliens participation in substance abuse treatment programs; rather, the Bureau denies aliens subject to BICE detainers consideration for early release on account of their completion of a residential drug abuse treatment program. *See* 28 C.F.R. §550.58(a)(1)(I). Of note, the Bureau clearly possesses the power to categorically exclude inmates from consideration for early release. *See Lopez v. Davis,* 531 U.S. 230, 239-44 (2001) (upholding a Bureau regulation categorically excluding, based upon its general discretion under the statute to grant or deny early release, prisoners convicted of otherwise nonviolent offenses that involved use of a firearm). Furthermore, the Bureau may aim such an exclusion at deportable aliens if it has a rational basis for its decision. *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976).

That said, Petitioner's ineligibility for sentence reduction is actually a consequence of the "detainer exclusion" explained above. The Bureau does not allow inmates who are ineligible for community-based treatment to receive consideration for early release-irrespective of whether they complete a substance abuse treatment program. 28 C.F.R. § 550.58(a)(1)(v). As noted above, all inmates with detainers-not just deportable aliens-fall

into this category. The Bureau's decision to link consideration for early release with eligibility for community-based treatment is rational and has been upheld by every court to consider the issue. *See, e.g., Rublee v. Fleming*, 160 F.3d 213, 215-18 (5th Cir. 1998).

... As one court has explained:

> The [Bureau] does not act in violation of Fifth Amendment equal protection standards in providing programs for prisoners who have a lawful right to remain in the country, whose rehabilitation is of interest to this country and the policy of this society, and in not providing programs for deportable aliens who have no right to be in the country and whom Congress has an interest in deterring from entering or returning ... There is no equal protection violation in different treatment of aliens as to rehabilitation and other programs. The United States may treat deportable aliens and citizens differently. There is no primary interest in reformation of deportable persons. That's an interest of the country to which they may be deported. Deterring further illegal reentry is a legitimate interest of the United States as well as saving expenses. Also, special security may be justified to avoid flight to the border. In the case of American citizens, or lawful residents, reformative programs are a worthy correctional consideration.

*Ruiz-Loera v. United States*, No. 00-CV-323-K, 2000 WL 33710839, at *2 (D. Utah June 23, 2000) (citations omitted); *see also Tamayo*, 162 Fed. Appx. at 816, 2006 WL 52792, at *3 ("[T]here is a rational basis to deem deportable aliens, who will be sent out of the country after the term of their sentence, ineligible for programs geared toward rehabilitating prisoners who will re-enter society after their release from confinement.").

*Chau v. United States, supra*, 2006 WL 2443351.

Further, petitioner's claim that he is entitled to a sentence reduction because of his status as an alien fails to raise an issue justifying federal habeas corpus relief. To obtain relief under §2255, a prisoner must establish that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255. "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n. 10 (1976).

To prevail on a §2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *See Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

> [T]he petitioner must establish a " 'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)) (*citing Hill v. United States*, 368 U.S. 424 (1962)); accord *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

*McNeil v. United States*, 72 F.Supp.2d 801, 803 (N.D. Ohio 1999). Petitioner cannot meet this burden here.

> [N]onconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver. Given society's substantial

interest in the finality of judgments, only the most serious defects in the trial process will merit relief outside of the normal appellate system. Hence, when a federal statute, but not the Constitution, is the basis for postconviction attack, collateral relief from a defaulted claim of error is appropriate only where there has been fundamental unfairness, or what amounts to a breakdown of the trial process. *Reed*, 512 U.S. at ----, 114 S.Ct. at 2300.

Accordingly, nonconstitutional errors ordinarily are not cognizable on collateral review. Defendants must assert their claims in the ordinary course of trial and direct appeal. If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under §2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what really is being asserted is a violation of due process. Thus, as a practical matter, collateral relief does exist to vindicate rights of constitutional import that may lurk beneath otherwise garden-variety issues of statutory rights or guideline calculations.

*Grant v. United States, supra*, 72 F.3d at 506.

Moreover, the Court notes that, petitioner was advised at the time of his guilty plea and at sentencing that he would likely be deported upon his release.

COURT: Sir, are you a citizen of the United States?

DEFENDANT: No, sir.

COURT: All right. Do you understand that a conviction under these charges will likely have immigration implications for you?

DEFENDANT: Yes, sir, I do.

\*\*\*

MR. BENTON: ... INS [sic] has already imposed a detainer in this case.

\*\*\*

MS. SHOEMAKER: That is correct, Your Honor, there is a removal order pending with Immigration and Customs Enforcement.

*Transcript, Guilty Plea*, at 16-17.  At sentencing, defense counsel requested the Court to consider reducing petitioner's sentence under 18 U.S.C. §3553 because he would be subject to deportation upon his release.  *Sentencing Transcript*, at 3.

> Obviously any deportation order will take effect following the completion of any sentence that this Court would impose and after having served a term of incarceration with the Bureau of Prisons, in that while incarcerated, his status, and that being the fact that he will be subject to a deportation order, eliminates for Mr. Ahmad's opportunities to participate in a number of programs that are available within the Bureau of Prisons, including any boot camp facilities and other educational rehabilitative programs that are designed specifically for individuals who would fall within the range of sentences as recommended by the guidelines.

> Consequently, given the fact that he will be denied or otherwise excluded from participation in those programs, it would appear to me only fair and only right that the Court should take that into consideration because now he will be suffering a sentence that other similarly situated defendants or inmates would not be suffering, and that is... a denial of the participation in those programs.

*Id.*, at 3-4.[2]  The Court sentenced petitioner to concurrent terms of 33 months incarceration,

---

[2]    The Sixth Circuit has held that there may be circumstances where downward departure based on a defendant's

which was the lower end of petitioner's recommended sentence of 33 to 41 months under

the United States Sentencing Guidelines. *Id.*, at 28.

      I'm rather incensed by the conduct here.... [H]e's a thief, and

---

             deportable alien status is appropriate. In *United States v.*
             *Ebolum*, 72 F.3d 35, 38 (6th Cir. 1995), the defendant was an
             illegal alien. He pled guilty to illegally entering and being
             found in the United States, in violation of 8 U.S.C. § 1326. At
             sentencing, he requested downward departure because, as a
             deportable alien, he was not eligible for certain prison
             programs. Therefore, he asserted that his sentence was more
             harsh compared to other inmates who were eligible for the
             programs. The district court declined to grant downward
             departure. The Sixth Circuit affirmed.

      The *Ebolum* Court noted that the crime committed by the defendant could
only be committed by aliens whose conduct necessarily makes them
deportable. Therefore, the Court reasoned that the Sentencing
Commission must have taken the status of defendants such as Ebolum
into account in formulating the guideline that applied to his offense.
Consequently, the Court held that downward departure is not permissible
"from a sentence imposed under a guideline that applies primarily to
aliens who are deportable." 72 F.3d at 38. The Court declined, however, to
find that deportable alien status can never be a basis for downward
departure in sentencing for other types of crimes.

      In *United States v. Arefin,* 225 F.3d 660 (6th Cir. 2000)(unpub.op.), the
defendant requested downward departure on the same grounds asserted
in *Ebolum.* Like *Ebolum,* the district court rejected the request and the Sixth
Circuit affirmed (finding that it was a proper exercise of the district court's
discretion). In its analysis, the *Arefin* Court acknowledged that the Sixth
Circuit has not clearly articulated its position on whether downward
departure based on a defendant's alien status is permissible. However,
considering *Ebolum* and precedent in other circuits, the Court assumed for
purposes of the appeal that such departures are allowed.

*United States v. Caneva*, 2006 WL 1155259 (E.D. Michigan May 1, 2006).

there's no way to sugarcoat that. And there's a whole bunch of people that... have been harmed by this. [M]y initial thought was to exceed, and in a large way, the recommendation of the probation department to send a message because I think under 3553(a) it's important... not only [t]o deter his criminal conduct, but to protect the public from further crimes by him and to promote respect for the law and to justly punish him for the offense. But I'm also aware that I've got to impose a sentence that's sufficient, but not greater than necessary....

\*\*\*

And this is a gentleman that's been involved in this sort of activity in the past....

[T]he Court has reined itself in by considering the need to avoid unwarranted sentencing disparities....

In any event, all of these counts will run concurrently to each other... and that's my Merry Christmas to you. They're concurrent.

*Id.*, at 32-33. Thus, the record fails to reflect any basis for federal habeas corpus relief.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation,* that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made

herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

<u>August 10, 2009</u>                                      <u>  s/Norah McCann King        </u>
                                                               Norah McCann King
                                                               United States Magistrate Judge